ELECTRONIC CITATION:  2011 FED App. 0002P (6th Cir.)
File Name:  11b0002p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:   Steven M. Schafer,                          )
                                                     )
                         Debtor.                     )
_____             )
                                                     )
                                                     )
Thomas C. Richardson,                                )          No. 10-8030
                                                     )
                         Trustee-Appellant,          )
                                                     )
            v.                                       )
                                                     )
Steven M. Schafer,                                   )
                                                     )
                         Appellee.                   )
_____             )
                                                     )
In re:   Dorothy Ann Jones,                          )
                                                     )
                         Debtor.                     )
_____             )
                                                     )
                                                     )
Thomas R. Tibble,                                    )          No. 10-8031
                                                     )
                         Trustee-Appellant,          )
                                                     )
            v.                                       )
                                                     )
Dorothy Ann Jones,                                   )
                                                     )
                         Appellee.                   )
_____             )

1

Appeal from the United States Bankruptcy Court
for the Western District of Michigan
Case No. 09-03268
Case No. 09-09415

Argued:  November 9, 2010

Decided and Filed:  February 17, 2011

Before: FULTON, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

_____

**ARGUED:**  Nicholas J. Daly, LEWIS REED & ALLEN, P.C., Kalamazoo, Michigan, for Appellants.  Scott P. Zochowski, ZOCHOWSKI LAW, Royal Oak, Michigan, for Appellees. Heather M.S. Durian, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Intervenor.  **ON BRIEF:**  Nicholas J. Daly, LEWIS REED & ALLEN, P.C., Kalamazoo, Michigan, for Appellants.  Scott P. Zochowski, ZOCHOWSKI LAW, Royal Oak, Michigan, Kerry D. Hettinger, HETTINGER & HETTINGER, P.C., Portage, Michigan, for Appellees.  Heather M.S. Durian, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Intervenor.

_____

**OPINION**

_____

MARCI B. McIVOR, Bankruptcy Appellate Panel Judge.  This is a consolidated appeal of two individual Chapter 7 bankruptcy cases involving two unrelated debtors, Steven M. Schafer and Dorothy Ann Jones.  In these consolidated appeals, the Chapter 7 Trustees, Thomas C. Richardson and Thomas R. Tibble, appeal the bankruptcy court's orders denying the Trustees' motions objecting to the Debtors' claim of exemptions under 11 U.S.C. § 522.  The bankruptcy court held that Michigan's bankruptcy-specific exemption statute (Mich. Comp. Laws § 600.5451) is constitutional under the Supremacy Clause of the United States Constitution, art. VI, cl.2.  For the reasons set forth below, the Panel REVERSES the bankruptcy court's orders.

## STATEMENT OF ISSUE

The issue on appeal is whether Michigan's bankruptcy-specific exemption statute (Mich. Comp. Laws § 600.5451) is unconstitutional under either the Bankruptcy Clause (art. I, § 8, cl. 4); or the Supremacy Clause (art. VI, cl. 2) of the United States Constitution.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel, and none of the parties has timely elected to have these appeals heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation omitted). A bankruptcy court's order denying a claim of exemption is a final, appealable order. *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 399 (B.A.P. 6th Cir. 2010); *see also* 9 *Collier on Bankruptcy*, ¶ 4003.03[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009).

The bankruptcy court's legal conclusions are reviewed *de novo*. Therefore, a bankruptcy court's decision that relies on or interprets state law and the Bankruptcy Code is reviewed *de novo*. *In re Schramm*, 431 B.R. at 399; *Lebovitz v. Hangemeyer* (*In re Lebovitz*), 360 B.R. 612 (B.A.P. 6th Cir. 2007) (reviewing bankruptcy court's interpretation of state's exemption statute *de novo* because it involves a question of law). Whether a state statute violates the United States Constitution is also subject to *de novo* review. *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005) (citation omitted). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citation omitted).

**FACTS**

<u>Steven M. Schafer (B.A.P. Case No. 10-8030)</u>

On March 23, 2009, Steven M. Schafer ("Schafer") filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

On Schedule C, Schafer claimed an exemption in the equity of his residence totaling $44,695. The home is estimated to have a fair market value of $160,000. The home is encumbered by two mortgages and a tax lien totaling $99,305. Schafer claims the state homestead exemption under Mich. Comp. Laws § 600.5451(1)(n). Under Mich. Comp. Laws § 600.5451(1)(n), Schafer, a disabled debtor, may claim a maximum exemption of $45,000 in the value of his home.

Thomas C. Richardson ("Trustee") was appointed the Chapter 7 Trustee.

On October 30, 2009, the Trustee filed an objection to Schafer's claim of exemptions and a brief in support of the Trustee's objection. The Trustee argued that the Michigan exemption statute violates the Bankruptcy Clause (art. I, § 8, cl. 4) and the Supremacy Clause (art VI, cl. 2) of the United States Constitution.

On November 2, 2009, the Trustee filed a Notice of Constitutional Challenge to Schafer's homestead exemption, in accordance with Fed. R. Civ. P. 5.1, made applicable in bankruptcy under Fed. R. Bankr. P. 9005.1. On November 3, 2009, the court clerk filed a certificate under 28 U.S.C. § 2403(b), certifying to Michael A. Cox, the Attorney General of the State of Michigan, that the constitutionality of § 600.5451(l)(n) of the Michigan exemption statute had been challenged. The Attorney General did not file an appearance in the Schafer case, nor respond to the Trustee's objection.

4

Dorothy Ann Jones (B.A.P. Case No. 10-8031)

On August 7, 2009, Dorothy Ann Jones ("Jones") filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

On Schedule C, Jones claimed an exemption in the equity of a residence she owns. Jones leases the real estate on which the residence is located from a local church campground. The home is estimated to have a fair market value of $30,000. The property is not encumbered by any security interests. Jones claims the state homestead exemption under Mich. Comp. Laws § 600.5451(1)(n). Under Mich. Comp. Laws § 600.5451(1)(n), Jones claims an exemption in the equity of the residence in the amount of $30,000.

Thomas R. Tibble ("Trustee") was appointed the Chapter 7 Trustee.

On October 20, 2009, the Trustee filed an objection to the claim of exemptions filed by Jones and a brief in support of the Trustee's objection. The Trustee argued that the Michigan exemption statute violates the Bankruptcy Clause (art. I, § 8, cl. 4) and the Supremacy Clause (art. VI, cl. 2) of the United States Constitution.

On October 23, 2009, the Trustee filed a Notice of Constitutional Challenge to Jones' homestead exemption, in accordance with Fed. R. Civ. P. 5.1, made applicable in bankruptcy by Fed. R. Bankr. P. 9005.1. On October 23, 2009, the court clerk filed a certificate under 28 U.S.C. § 2403(b), certifying to Michael A. Cox, the Attorney General of the State of Michigan, that the constitutionality of § 600.5451(1)(n) of the Michigan exemption statute had been challenged. The Attorney General did not file an appearance in the Jones case, nor respond to Trustee's objection.

The bankruptcy court consolidated the hearings in the Schafer and Jones bankruptcy cases for purposes of argument and decision.

The Trustees filed briefs and Schafer and Jones (hereinafter referred to jointly as "Debtors") had an opportunity to respond to the issues raised by the Trustees in their respective cases. On March 11, 2010, a joint hearing was held.

On April 22, 2010, the court entered an opinion and order in each case overruling the Trustees' objections to the Debtors' exemptions and concluding that Michigan's bankruptcy-specific exemption statute, Mich. Comp. Laws § 600.5451(1)(n), is constitutional under the Supremacy Clause of the United States Constitution.

On May 6, 2010, the Trustees filed their Notices of Appeal.

On July 21, 2010, the State of Michigan filed a motion for leave to intervene as a party under 28 U.S.C. § 2403(b) for the purpose of defending the constitutionality of the Michigan exemption statute § 600.5451 in the pending appeals. The motion was accompanied by a brief. The Panel granted the motion to intervene on August 24, 2010.

On July 22, 2010, the National Association of Consumer Bankruptcy Attorneys, National Consumer Law Center, Legal Services Association of Michigan, Michigan Poverty Law Program, and the Council of the Consumer Law Section of the State Bar of Michigan filed a joint motion for leave to file an amicus curiae brief in the pending appeals. The motion was accompanied by a brief. The Panel granted the motion to file an amicus curiae brief on August 24, 2010.

**DISCUSSION**

I.  <u>Congressional Power under the Bankruptcy Clause</u>

Congressional power to enact bankruptcy laws is derived from the Bankruptcy Clause of the United States Constitution. The Bankruptcy Clause grants Congress the authority to establish

"uniform laws . . . on the subject of Bankruptcies throughout the United States."[1] U.S. Const. art. I, § 8, cl. 4. The framers of the Constitution drafted the Bankruptcy Clause, in part, in response to the states' harsh treatment of debtors. "A debtor could languish in prison for years unless he indentured himself or a friend or relative redeemed his obligations. Indeed, in England, a debtor could be put to death." *In re Wallace*, 347 B.R. 626, 631 (Bankr. W.D. Mich. 2006) (citing *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 364-71, 126 S. Ct. 990, 997-1000 (2006)). In fact, "debtors often fared worse than common criminals in prison; unfortunate insolvents, unlike criminals, were forced to provide their own food, fuel, and clothing while behind bars." *Cent. Va. Cmty. Coll.*, 546 U.S. at 365, 126 S. Ct. at 997 (citing B. Mann, *Republic of Debtors: Bankruptcy in the Age of the American Independence*, 78-108 (2002)).

The Bankruptcy Clause was also adopted in order to resolve the difficulties posed by state-to-state variations in bankruptcy laws. The American Colonies, and later some States, had their own distinct laws for discharging debtors. *Cent. Va. Cmty. Coll.*, 546 U.S. at 365, 126 S. Ct. at 997. By establishing a uniform system, federal discharges in bankruptcy would be enforceable in every state. James Madison also believed that "[t]he power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States, that the expediency of it seems not likely to be drawn into question." The Federalist No. 42 (James Madison) (1788 WL 456).

The Framers feared that without a uniform system of bankruptcy laws, each state would "frame a bankruptcy system that 'best suits its own local interests, and pursuits' or that was marked 'by undue domestic preferences and favours'" thereby quashing the interests of nearby states. *Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 764 (6th Cir. 2003) (quoting 3 Joseph Story, *Commentaries on the Constitution*, §§ 1102, 1104 (1833), *in The Founders' Constitution* (Philip B. Kurland & Ralph Lerner eds., 1987)).

---

[1]The Bankruptcy Clause is often referred to by courts as the Uniformity Clause.

The Framers further understood that there could be no uniformity without exclusive jurisdiction in the federal government. Alexander Hamilton stated that the jurisdiction of the federal government was exclusive where the Constitution of the United States specifically granted Congress the power to make uniform laws. "This must necessarily be exclusive; because if each State had power to prescribe a DISTINCT RULE, there could not be a UNIFORM RULE." The Federalist No. 32 (Alexander Hamilton) (1788 WL 446). "By granting the power to Congress exclusively, the Constitution prevented runaway states from defeating bankruptcy's goals." *Hood*, 319 F.3d at 764-65.

Courts have debated whether Congress' power to establish uniform laws on bankruptcy is "exclusive" or "concurrent" in nature. The earliest case law interpreted Congress' power as exclusive. One case noted that "the system[] [is] directed to be uniform, which can only be rendered so by the exclusive power in one body to form them." *Golden v. Prince*, 10 F. Cas. 542, 545 (C.C.D. Pa. 1814).

Congress passed the first Bankruptcy Act in 1800. The first Bankruptcy Act permitted debtors to exempt certain property from the reach of the trustee and creditors in bankruptcy. Initially, the exemptions provided to debtors under federal bankruptcy law were quite limited. The Act of 1800 only provided one exemption for "his or her necessary wearing apparel, and the necessary wearing apparel of the wife and children and necessary beds and bedding of such bankrupt." Bankruptcy Act of 1800, ch. 19, 2 Stat. 19, 19 (1800) (repealed by Act of 1803, ch. 6, 2 Stat. 248 (1803)). The repeal of the Act of 1800 in 1803 meant that debtors and creditors had to rely on state law to resolve any disputes between debtors and creditors.

In 1819, in the case of *Sturges v. Crowninshield*, 17 U.S. 122 (1819), the Supreme Court considered what the Framers intended by the uniformity requirement of the Bankruptcy Clause. At first blush, this case appears to be a departure from the Framers' original goal of creating a system in which the federal government had exclusive power to establish bankruptcy laws. In an opinion by Chief Justice Marshall, the *Sturges* Court held that until Congress exercises its power under the

Bankruptcy Clause, "states may . . . pass laws concerning bankrupts." *Id*. at 199. While holding that states could act where Congress had not acted, the Court emphasized that "[w]henever the terms in which a power is granted to congress, or the nature of the power, require that it should be exercised exclusively by congress, the subject is as completely taken from the state legislatures, as if they had been expressly forbidden to act on it." *Id*. at 193. Despite what appears to be the Court's interpretation that the Bankruptcy Clause, therefore, does not grant Congress "exclusive" power, the Court's decision was based on the inaction of Congress, at that time, to enact bankruptcy legislation.[2] As the Sixth Circuit itself has recognized "the *Sturges* non-exclusivity interpretation was based less on the original understanding of the Convention than on the necessity of having *some* system in place when Congress could not enact bankruptcy legislation." *Hood*, 319 F.3d at 765; *see also Wallace*, 347 B.R. at 633 (citing to *Hood* for the proposition that "the exception created by *Sturges* was more a necessity of the times than a reinterpretation of how the authority to enact bankruptcy laws was to be allocated between Congress and the various states."). In *Sturges*, the Court recognized that since Congress had not enacted bankruptcy legislation, the states had to rely on the systems in place in their own jurisdictions.

It was not until 1841 that Congress enacted the second bankruptcy act. The Act of 1841 provided more exemptions for debtors than the Act of 1800. This Act "excepted . . . the necessary household and kitchen furniture, and such other articles and necessaries of such bankrupt . . . but altogether not to exceed in value, in any case, the sum of three hundred dollars; and also the wearing

---

[2]After the adoption of the Bankrutpcy Clause, federal bankruptcy laws were passed and repealed repeatedly, leaving no comprehensive system of bankruptcy laws in place in the interim. Throughout the nineteenth century, bankruptcy laws were often enacted to address national economic crises. The first Bankruptcy Act, the Act of 1800, was repealed in 1803. Congress passed the second Bankruptcy Act, the Act of 1841, in response to a financial collapse and it was repealed once the political aim of providing relief to 30,000 debtors had been accomplished. The third Bankruptcy Act, the Act of 1867, was passed in response to a financial crisis that emerged following the Civil War. The fourth Bankruptcy Act was passed in 1898 as a partial response to the financial panic of the 1890s. A federal system of bankruptcy laws has been in place since the Bankruptcy Act of 1898. Joseph Lamport, *The Preemption of Bankruptcy-Only Exemptions*, 6 Cardozo L. Rev. 583, 587-88 (1985).

apparel of such bankrupt, and that of his wife and children." Bankruptcy Act of 1841, ch. 9, § 3, 5 Stat. 440 (1841) (repealed by Act of 1843, ch. 82, 5 Stat. 614 (1843)).

The Bankruptcy Act of 1867 was still more expansive and allowed debtors to exempt property under "the laws of the State in which the bankrupt has his domicile at the time of the commencement of proceedings in bankruptcy, to an amount not exceeding that allowed by such State exemption laws." Bankruptcy Act of 1867, ch. 176, § 14, 14 Stat. 517, 522-23 (1867). The legislation limited federal recognition of state exemptions to those state exemptions enacted *as of 1864*. *Id*. (emphasis added). State exemptions enacted after 1864 could be claimed in an action under state law, but not in bankruptcy.

The Bankruptcy Act of 1898 did not contain such a limitation and recognized general state exemption statutes enacted *after* the federal legislation. Also, the Act of 1898 did not contain uniform federal exemptions. It provided that the Act would "not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition" where the debtor was domiciled. Bankruptcy Act of 1898, § 6, ch. 541, 30 Stat. 544, 548 (1898) .

In a landmark decision in 1902, the Supreme Court decided *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 22 S. Ct. 857 (1902), which determined that the exemption provision of the Act of 1898 satisfied the uniformity requirement of the Bankruptcy Clause. The case arose out of a dispute between a judgment creditor, Hanover National Bank, that sought to enforce a judgment against a debtor, despite the fact that the debtor had received a discharge in bankruptcy subsequent to the judgment. The bank argued that the Act of 1898 was unconstitutional because, *inter alia*, the Act failed to meet the requirement of uniformity under the Bankruptcy Clause and it was an unconstitutional delegation of power to the states. The bank based its argument on § 6 of the Act which permitted debtors to choose "exemptions which are prescribed by the state laws in force at the time of the filing of the petition . . . ." *Hanover*, 186 U.S. at 189, 22 S. Ct. at 861. The Supreme Court rejected the bank's argument and concluded that "[t]he general operation of the law is uniform

10

although it may result in certain particulars differently in different states." *Hanover*, 186 U.S. at 190, 22 S. Ct. at 861. The Court held that although bankruptcy laws must be uniform throughout the United States "that uniformity is *geographical*, and not personal [.]" *Hanover*, 186 U.S. at 188, 22 S. Ct. at 860 (emphasis added). The Court rejected the concept of true uniformity and determined that the exemptions of the Act of 1898 met the geographic uniformity test and, as such, were constitutional.[3] The Supreme Court also concluded that "the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each state whatever would have been available to the creditor if the bankrupt[cy] law had not been passed." *Hanover*, 186 U.S. at 190, 22 S. Ct. at 861.

In 1929, the Supreme Court decided the case of *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 49 S. Ct. 108 (1929). The Court struck down an Arkansas statute that provided an alternative system governing the distribution of debtor's property for payment of their debts and providing for the debtor's discharge. The court concluded:

> The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national act is in force. Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, [a] choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations.

*Pinkus*, 278 U.S. at 265, 49 S. Ct. at 110 (citations omitted). The Supreme Court, therefore, held that the provisions of the state insolvency act are "within the field entered by Congress when it passed the Bankruptcy Act, and therefore such provisions must be held to have been superseded." *Pinkus*, 278 U.S. at 266, 49 S. Ct. at 110.

---

[3]The Supreme Court however did not address the question before this Panel, whether states could enact bankruptcy-specific exemptions.

11

The Bankruptcy Act of 1898 governed bankruptcy law until it was replaced by the Bankruptcy Reform Act of 1978. The Act of 1978 included what is known as the "opt-out" clause, § 522(b)(2) of the Bankruptcy Reform Act. Specifically, this opt-out provision allowed states to affirmatively opt-out of the enumerated federal exemptions completely, thereby restricting bankruptcy debtors to the particular exemptions available in their state. Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, Nov. 6, 1978, 92 Stat. 2549 (1978). Congress did not define the scope of the states' power when opting out of the federal exemption scheme. *See Lipshie v. Bartley* (*In re Bartley*), 33 B.R. 768, 772 (Bankr. E.D.N.Y. 1983) (noting that "[t]he language of the statute enunciates no guidelines binding upon the states in their creation of exemption statutes.").

The Bankruptcy Code's opt-out provision giving states the power to "opt-out" of the federal exemption scheme has survived judicial scrutiny. In *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir. 1983), the Sixth Circuit upheld the constitutionality of Tennessee's opt-out statute. *See also Storer v. French* (*In re Storer*), 58 F.3d 1125 (6th Cir. 1995) (relying on *Rhodes* to conclude that § 522(b)(1) was constitutional under the Supremacy Clause and Ohio debtor could not use federal exemptions after Ohio had opted out of the federal scheme).[4]

Under the most recent bankruptcy legislation, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), debtors continue to be able to shield certain property from the reach of the trustee and creditors in bankruptcy. Under § 522(b)(2), a debtor may elect to exempt property under federal law or under state law subject to the state's ability to "opt-out" and prohibit a debtor from using federal exemptions.[5]

---

[4] 11 U.S.C. § 522(b) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. 11 U.S.C. § 522(b)(1) is now § 522(b)(2).

[5] There are currently 35 states that prohibit debtors from electing the federal exemptions included in § 522(d): Alabama, Arkansas, Arizona, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Utah, Virginia, West Virginia, and Wyoming.

II.     Michigan's Bankruptcy Exemption Statute

The State of Michigan has *not* elected to opt-out of the federal exemptions statute provided under 11 U.S.C. § 522(d).[6]   Therefore, pursuant to 11 U.S.C. § 522(b)(3),[7] debtors who reside in Michigan may choose to take the federal exemptions listed in the Bankruptcy Code at 11 U.S.C. § 522(d), or exemptions authorized under state law.  Since January 3, 2005, Michigan debtors who choose to take exemptions enacted by the state legislature have had the choice of two different state exemption statutes, a statute available to all Michigan residents (Mich. Comp. Laws § 600.6023), and a statute available only to Michigan residents who have filed for bankruptcy (Mich. Comp. Laws § 600.5451).  Mich. Comp. Laws § 600.5451 ("bankruptcy-specific exemption statute") states in relevant part:

> Sec. 5451. (1) *A debtor in bankruptcy under the bankruptcy code*, 11 U.S.C. 101 to 1330, may exempt from property of the estate property that is exempt under federal law or, under 11 U.S.C. § 522(b)(2), the following property:

(emphasis added).

The homestead exemption for a debtor whose real property is not owned by the entireties is substantially more liberal under the bankruptcy-specific exemption statute than the exemption

---

[6]Other states that also allow debtors to choose between the federal and state exemptions include: Alaska, Connecticut, Hawaii, Kentucky, Massachusetts, Minnesota, New Jersey, New Mexico, Pennsylvania, Rhode Island, Texas, Vermont Washington, Wisconsin.

[7]Section 522(b)(3)(A) states in relevant part:

(3) Property listed in this paragraph is –

   (A) subject to . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; . . .

13

allowed under either the general Michigan exemption statute or the federal exemptions. The bankruptcy-specific exemption statute provides:

> (n) The interest of the debtor, the codebtor, if any and the debtor's dependents, not to exceed $30,000 in value or, if the debtor or a dependent of the debtor at the time of filing of the bankruptcy petition is 65 years of age or older or disabled, not to exceed $45,000 in value, in a homestead.

Mich. Comp. Laws § 600.5451. By comparison, the homestead exemption available to all Michigan residents is capped at $3,500. Mich. Comp. Laws § 600.6023. The federal homestead exemption is capped at $21,625. 11 U.S.C. § 522(d)(1).

The Michigan legislature enacted the bankruptcy-specific exemption statute on January 3, 2005. The legislative history relating to the statute is sparse and does not reveal the Michigan legislature's reasons for creating a bankruptcy-specific exemption statute. The genesis of the statute appears to be a concern that the general exemption statute needed to be amended both as to dollar amounts and as to the assets individuals could protect.

In 2001, an Advisory Committee to the Civil Law and Judiciary Subcommittee of the House Civil and Judiciary Committee ("Advisory Committee")

> was formed in response to a request by Representative Alexander Lipsey for recommendations on possible updates to the states exemption laws. The committee [was] comprised [of] attorneys from around the state with backgrounds in debtor/creditor and bankruptcy laws. Not surprisingly, members found the current exemption thresholds inadequate to enable debtors enough assets to successfully begin anew.

MI H.F.A. B. An., H.B. 5763, 2004 Reg. Sess. (May 25, 2004). The cover letter from the Advisory Committee's final report and recommendations stated, "the 'ultimate goal' of this committee 'was to update or redraft exemption statutes that provided stability in the context of today's times for those under financial distress, yet be fair to creditor's [sic] owed legitimate debts.'" Winnifred P. Boylan & Melanie R. Beyers, *The Trek of Michigan Exemptions in the Universe of Bankruptcy*, 33 Mich. Real Prop. Rev. 85, 87 (Summer 2006)). After two years, the Advisory Committee issued

a Report and Recommendations ("Advisory Report") to the Subcommittee suggesting their recommended changes, including an increase in the exemption amounts.[8] *In re Pontius*, 421 B.R. 814 (Bankr. W.D. Mich. 2009). The Advisory Report did not however, recommend that the provisions in § 600.5451 be limited only to debtors in bankruptcy proceedings and there is no explanation in either the legislative history or the Advisory Committee records as to why the statute was enacted with that limitation.[9] Winnifred P. Boylan & Melanie R. Beyers, *The Trek of Michigan Exemptions in the Universe of Bankruptcy*, 22 Mich Real Prop. Rev. at 88.

In the appeals before this Panel, the Debtors chose the exemptions allowed under the bankruptcy-specific exemption statute, for the purpose of claiming the homestead exemption allowed in Mich. Comp. Laws § 600.5451(1)(n). The Trustees in Debtors' respective cases objected to the Debtors' exemptions on the grounds that the bankruptcy-specific statute was unconstitutional. The Bankruptcy Court overruled the Trustees' objections and held that the bankruptcy-specific statute is constitutional.

Two other Michigan bankruptcy courts have addressed the constitutionality of Michigan's bankruptcy-specific exemption statute. *See In re Pontius*, 421 B.R. 814; *In re Wallace*, 347 B.R. 626 (Bankr. W.D. Mich. 2006). Both courts have concluded that Michigan's bankruptcy-specific exemption statute is unconstitutional.

The case law from other jurisdictions is divided as to whether similar bankruptcy-specific exemption statutes are constitutional. Some courts have held that such statutes are unconstitutional, either by determining that the exemption scheme violates the requirement of "uniformity" under the

---

[8] The Advisory Committee recommended an increase in the generally applicable homestead exemption from $3,500 (under Mich. Comp. Laws § 600.6023) to $30,000, and if the debtor or a dependent of the debtor was over the age of 65, the allowable exemption was increased to $45,000. *In re Pontius*, 421 B.R. at 817.

[9] In addition to Michigan, eight other states have adopted exemptions applicable only to debtors in bankruptcy proceedings. The states are: California, Colorado, Georgia, Indiana, Montana, New York, Ohio, and West Virginia.

Bankruptcy Clause of the United States Constitution, art. I, § 8, cl. 4., or violates the Supremacy Clause of the United States Constitution, art VI, cl. 2. *See Kanter v. Moneymaker* (*In re Kanter*), 505 F.2d 228 (9th Cir. 1974) (invalidating, on Supremacy Clause grounds, California law which precluded trustees and other assignees by operation of law from acquiring an interest in or lien rights upon a personal injury cause of action); *In re Regevig*, 389 B.R. 736 (Bankr. N.D. Ariz. 2008) (holding that California's alternative exemptions applying only in bankruptcy cases violated the Supremacy Clause of the U.S. Constitution); *In re Cross*, 255 B.R. 25 (Bankr. N.D. Ind. 2000) (holding that Indiana's bankruptcy exemption for entireties property did not violate the "uniformity" requirement of the Bankruptcy Clause, but was invalid under the Supremacy Clause); *In re Mata*, 115 B.R. 288, 291 (Bankr. D. Colo. 1990) (Colorado exemption statute establishing a separate state-created bankruptcy exemption for debtors and another for non-bankruptcy debtors, is an "impermissible excursion by the State of Colorado into an area reserved to Congress" under the Bankruptcy Clause); *In re Lennen*, 71 B.R. 80, 83 (Bankr. N.D. Cal. 1987) (concluding that bankruptcy-specific exemptions treat debtors who have filed for bankruptcy differently from debtors who have not and, when measured by the "geographic uniformity test [established in *Moyses*], the exemption scheme . . . must fail."); *In re Reynolds*, 24 B.R. 344, 347 (Bankr. S.D. Ohio 1982) ("When a state endeavors to adopt exemptions applicable only in the bankruptcy court, it then invades an area of law reserved to the federal government, as preempted by the United States Constitution and statutes enacted pursuant thereto.").

Other courts have concluded that bankruptcy-specific exemption statutes are constitutional.*See Sheehan v. Peveich* (*In re Peveich*), 574 F.3d 248 (4th Cir. 2009), *aff'g*, *In re Morrell*, 349 B.R. 405 (Bankr. N.D. W. Va. 2008) (reasoning that West Virginia's bankruptcy-only exemption statute, which accorded debtors in bankruptcy five times the homestead exemption accorded under federal law, was consistent with the goal of the "opt-out" provision permitting states to set exemption levels appropriate to the locale and did not frustrate the purpose of the Bankruptcy Code; therefore, it was not valid under the Supremacy Clause); *Sticka v. Applebaum* (*In re Applebaum*), 422 B.R. 684 (B.A.P. 9th Cir. 2009) (holding that California's bankruptcy-specific exemption statute is not preempted by the Bankruptcy Code simply because the state exemptions

16

differ from the federal exemptions and does not violate the uniformity requirement because the statute applies equally to all debtors and creditors in bankruptcy); *In re Brown*, No. 06-30199, 2007 WL 2120380 (Bankr. N.D.N.Y. July 23, 2007), *aff'd*, *CFCU Cmty. Credit Union v. Brown*, No. 07-cv-0856, 2007 WL 4560671 (N.D.N.Y. Dec. 18, 2007) (holding that New York's bankruptcy specific exemption statute is not a violation of the Supremacy Clause because it did not conflict with the federal exemptions in § 522(d)); *In re Shumaker*, 124 B.R. 820, 826 (Bankr. D. Mont. 1991) (declining to follow *Lennen* and *Mata* in considering the challenge to a Montana statute exempting Individual Retirement Accounts only for bankruptcy debtors; holding that the bankruptcy-specific statute did not violate the doctrine of geographic uniformity or equal protection and was not an improper delegation of power to the states).

The issue of whether an exemption statute that operates only in the event of a bankruptcy proceeding is unconstitutional under the Bankruptcy Clause or Supremacy Clause of the United States Constitution, has also been discussed by legal commentators. *See* 4 *Collier on Bankruptcy* ¶ 522.02[4], at 522-20 (Alan N. Resnick & Henry J. Sommer eds., 16th ed rev. 2009); Winnifred P. Boylan & Melanie R. Beyers, *The Trek of Michigan Exemptions in the Universe of Bankruptcy*, 22 Mich Real Prop. Rev. 85 (Summer 2006); Edward Stechschulte, *The (Un)constitutionality of State-Enacted Bankruptcy-Specific Exemptions: Using Ohio Revised Code Section 2329.66(A)(18) as a Mechanism for Analysis*, 40 Univ. Tol. L. Rev. 761 (Spring 2009); Joseph Lamport, Note, *The Preemption of Bankruptcy-Only Exemptions*, 6 Cardozo L. Rev. 583 (1985).

III.     The Michigan Exemption Statute violates the Bankruptcy Clause of the United States Constitution.

A.     A state exemption statute which applies only to state residents who file for bankruptcy violates the Bankruptcy Clause.

The Bankruptcy Clause grants Congress the authority to "establish uniform laws . . . on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. The bankruptcy court concluded that the uniformity requirement of the Bankruptcy Clause does not apply to laws enacted by a state. The court stated:

17

because this court does not regard M.C.L. § 600.5451 as an exercise of federal legislative power by the State of Michigan, and because the court does not believe the uniformity requirement of the Bankruptcy Clause applies to state enactments, the observation in *Hanover* to the effect that a trustee must take in each state what he would take if the bankruptcy law had not been enacted, does not require a different result in this case. *Contra Pontius*, 421 B.R. at 822 (*citing Hanover*, 186 U.S. at 190, 22 S. Ct. 857). The *Hanover* court was considering the constitutionality of the federal Bankruptcy Act, not a specific state law, and simply concluded that if trustees in different states take property subject to state-created exemptions, that fact does not make the Bankruptcy Act non-uniform. The high court was not considering, and therefore its opinion does not resolve, the distinct question of bankruptcy-specific state exemption statutes.

*Jones*, 428 B.R. 720, 729 n.9 (Bankr. W.D. Mich. 2010). The Panel determines that the trial court erred in concluding that the uniformity requirement of the Bankruptcy Clause "does not apply to state enactments." The original purpose of the framers of the Constitution was to replace the "hodgepodge of bankruptcy relief" with one national system. *In re Wallace*, 347 B.R. 626, 631 (Bankr. W.D. Mich. 2006). It was hoped that a uniform system would resolve the chaos caused by state-to-state variations in bankruptcy laws and to prevent states from enacting laws that apply only to debtors in bankruptcy. The Bankruptcy Clause exists to restrict the power of the states to legislate in the area of bankruptcy. A state law which applies only to debtors in bankruptcy must be analyzed under the uniformity requirement of the Bankruptcy Clause.

      B.     When the states adopted the Constitution, including the Bankruptcy Clause, the states ceded their authority to legislate in the area of bankruptcy.

The Sixth Circuit has ruled that in adopting the Constitution, which included the Bankruptcy Clause, the states ceded their authority in the area of bankruptcy to the federal government. In *Hood v. Tenn. Student Assist. Corp.* (*In re Hood*), 319 F.3d 755 (6th Cir. 2003), *aff'd*, 541 U.S. 440, 124 S. Ct. 1905 (2004), the issue was whether the enactment of the Bankruptcy Clause precluded states from asserting that a state was immune from suit in federal court, notwithstanding the protections afforded states under the Eleventh Amendment. The court carefully analyzed the Federalist Papers

18

and the text of the Constitution and concluded that the Bankruptcy Clause and 11 U.S.C. § 106(a)(1)[10] of the Bankruptcy Code abrogated states' immunity from suit in federal court. The court started its analysis by determining whether states had ceded their authority to legislate in the area of bankruptcy when the Constitution was enacted. The court stated:

> Beginning with the Constitution's text, Article I gives Congress the power to make "uniform" laws over only two issues: bankruptcy and naturalization. Granting the federal government the power to make uniform laws is, at least to some extent, inconsistent with states retaining the power to make laws over that issue.

*Id*. at 763 (footnote omitted). Moreover, "the justification for the grant of exclusivity was not a mere desire to have *one* system, but a system that rose above individual states' interests." *Id*. at 764. If states could pass their own laws targeted only to debtors in bankruptcy, "uniformity would be unattainable[.]" *Id*. The court concluded that the states had ceded their authority in the area of bankruptcy and abrogated their immunity from suit in federal court. The Court held that the "text of the Constitution and other evidence of the Framers' intent demonstrate that under the Bankruptcy Clause of Article I, section 8, Congress has the power to abrogate state sovereign immunity." *Id*. at 762.

The court in *Hood* was addressing a different issue than the issue in this appeal, namely whether the uniformity requirement of the Bankruptcy Clause authorizes Congress to abrogate states' immunity from suit in federal court. The court nonetheless recognized the states' loss of legislative power as a consequence of the Bankruptcy Clause. *Id*. at 765 ("[I]t is possible that in ceding some

---

[10]11 U.S.C. § 106(a)(1) states:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>    (1) Sections 105, 106, 107, 108, 303, 346, 362, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

sovereignty with the Bankruptcy Clause, the states ceded their legislative powers but not their immunity from suit."). In analyzing the relevant case law, the *Hood* court further observed that where it would violate the uniformity requirement of the Bankruptcy Clause, even otherwise valid state law could not be enforced by a bankruptcy court. *Id.* at 763-64 (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S. Ct. 237 (1946)). *Hood* established that the exercise of state power, whether it is to legislate or to assert immunity from suit, is limited by the uniformity requirement set forth in the Bankruptcy Clause.

C.     The existence of concurrent jurisdiction is insufficient to protect Michigan's bankruptcy-specific exemption statute from constitutional challenge.

As discussed *supra*, the Bankruptcy Reform Act of 1978 included a provision which is commonly referred to as the "opt-out" clause. 11 U.S.C. § 522(b)(2) of the Act allowed states to affirmatively opt-out of the enumerated federal exemptions completely, thereby restricting debtors to the particular exemptions available in their state. 11 U.S.C. § 522(b)(3) allows debtors in non opt-out states to choose between the federal exemptions and "State or local law that is applicable on the date of the filing of the petition." Because states may control which exemption scheme a state resident may choose, states are said to have "concurrent" jurisdiction with the federal government in the area of exemptions.

The bankruptcy court relied on *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir. 1983) and *Storer v. French* (*In re Storer*), 58 F.3d 1125 (6th Cir. 1995), for the proposition that 11 U.S.C. § 522(b)(1) was "'a recognition of the concurrent legislative power of the state legislatures to enact laws governing bankruptcy exemptions.'" *Jones*, 428 B.R. at 724 (citations omitted). The general proposition is correct, but the cases are not persuasive authority on the issue before the Panel.

In *Rhodes*, the Sixth Circuit Court of Appeals reversed a judgment of the Bankruptcy Court for the Middle District of Tennessee that held as invalid Tennessee's statute "opting-out" of the federal bankruptcy exemption scheme. The Sixth Circuit agreed with the Fifth Circuit's holding

in *In re McManus*, 681 F.2d 353, 355-56 (5th Cir. 1982), that "states are empowered to create whatever exemptions they elect," even if they are more or less restrictive than the federal exemption scheme. *Rhodes*, 705 F.2d at 163.

In *Storer*, the Sixth Circuit addressed whether Ohio's opt-out statute, which denied debtors the right to use the federal exemption scheme, violated the Privileges and Immunities Clause of the Fourteenth Amendment, the Supremacy Clause, and the Fifth Amendment to the Constitution of the United States, as the debtors had argued. The Court in *Storer* held that the *Rhodes* decision was controlling and therefore, the debtors' argument that Ohio's opt-out statute was invalid under the Supremacy Clause was without merit. *Storer*, 58 F.3d at 1129.

*Rhodes* and *Storer* both stand for the proposition that the U.S. Constitution permits Congress to give states the power to prohibit any state resident who files for bankruptcy from using the exemptions permitted under the Bankruptcy Code. These cases are consistent with the case law in other jurisdictions which hold that state laws that entirely "opt-out" of the federal exemption (codified at 11 U.S.C. § 522(b)(2)) are constitutional. *Rhodes* and *Storer* also correctly conclude that states have "concurrent" jurisdiction in the area of bankruptcy exemptions. In enacting the "opt-out" provision, Congress delegated to the states the power to prevent their residents from choosing federal exemptions. Because Congress has given the states the power to decide which exemption scheme their residents may choose, states have concurrent jurisdiction. The bankruptcy court's conclusion that this concurrent jurisdiction enables states to pass laws that apply only to debtors in bankruptcy is not supported by the case law. The rulings in *Storer* and *Rhodes* do not address the issue of whether the Bankruptcy Clause limits the scope of that concurrent jurisdiction. In sum, it is settled law that states are permitted to *preclude* debtors from using federal exemptions or allow debtors to choose between a state exemption scheme and the federal exemption scheme. This does not lead to the conclusion that states are allowed to take the affirmative step of enacting legislation that applies *only* to state residents who file for bankruptcy. Neither *Storer* nor *Rhodes* addresses this issue and these cases are therefore not persuasive grounds for upholding the constitutionality of the bankruptcy-specific exemption statute.

21

The 1978 Act unquestionably authorized states to prevent their residents from using federal exemptions or to allow residents to choose between a state scheme and the federal scheme. The issue on appeal is whether it also reduced the scope of the Uniformity Clause and ceded power back to the states to legislate in the area of bankruptcy. Two appellate courts have ruled that the existence of concurrent jurisdiction authorizes states to enact an exemption scheme that applies only to residents who file for bankruptcy. *See Sticka v. Applebaum* (*In re Applebaum*), 422 B.R. 684 (B.A.P. 9th Cir. 2009); *Sheehan v. Peveich* (*In re Peveich*), 574 F.3d 248 (4th Cir. 2009). Courts concluding that the existence of concurrent jurisdiction allows states unlimited power to legislate the exemptions available to debtors in bankruptcy frequently cite 11 U.S.C. § 522(b)(3)(A) in support of that position. Section 522(b)(3)(A) allows a debtor to exempt "any property that is exempt under Federal law . . . or State or local law that is applicable on the date of filing of the petition at the place in which the debtor's domicile has been located . . . ." Courts have argued that the language "State or local law that is applicable on the date of the filing of the petition" authorizes states to pass bankruptcy-specific laws, which the debtor may then choose.

This argument conflates two different rights: that is, the *debtor's* right to exempt property under applicable state law, with the *states'* right to enact legislation which must satisfy Constitutional requirements. Certainly a Michigan resident who files for bankruptcy is permitted under § 522(b)(3) to exempt property under any existing "State or local law," but that language does not logically lead to the conclusion that the state has a right to pass a law which violates the United States Constitution. If it is determined that a state law violates the Constitution, that law will no longer be available to Michigan residents. Section 522(b)(3) does not delegate to the states the power to legislate exemptions which apply only to debtors in bankruptcy. The states' "concurrent jurisdiction" is limited to "opting-out" or passing laws which apply to *all* state residents.

Although Congress allows states to choose whether or not to opt-out of the federal exemptions under § 522(b)(2), it does not follow that states may enact their own bankruptcy laws. *See* 4 *Collier on Bankruptcy*, ¶ 522.02[4] (Alan R. Resnick & Henry J. Sommer eds., 15th ed rev.

22

2009). The court's opinion in *In re Cross*, 255 B.R. 25 (Bankr. N.D. Ind. 2000), correctly concluded that

> [h]aving been given this ability - the power to forbid - is not the same thing as having been given the power to create. Thus, in giving states the ability to opt out of the federal bankruptcy exemptions Congress did not give them the authority to create bankruptcy exemptions. Instead, what the opt-out represents is a Congressional willingness to recognize the generally available exemptions that states have created for their own purposes in bankruptcy proceedings.

*In re Cross*, 255 B.R. at 34 n.5. This position is more colorfully stated by the court in a Michigan decision, *In re Wallace*, in which the bankruptcy court opined:

> [I]t is within Congress' discretion under the Bankruptcy Clause to decide what is to be the set of exemptions available to debtors seeking bankruptcy relief. Congress can create its own scheme. It can establish more than one scheme. It can reference state law for purposes of defining the scheme it has chosen. For that matter, Congress could reference the laws of Kazakstan to define the bankruptcy exemption scheme if it were to so choose. What Congress cannot do under the Constitution is delegate to Kazakstan, to the states, or to any other entity the power to actually decide what is to be the appropriate scheme. That power is reserved under the Constitution for the exclusive exercise of Congress.

*In re Wallace*, 347 B.R. 626, 635 (Bankr. W.D. Mich. 2006).

This Panel concludes that the "opt-out" language of 11 U.S.C. § 522(b)(2) and the language of § 522(b)(3) do not alter the requirements of the Bankruptcy Clause; that is, the states *may not* pass legislation which relates only to debtors in bankruptcy.

D.    <u>The Michigan statute does not comply with the requirements of "geographic" uniformity.</u>

This Panel acknowledges that the existence of concurrent jurisdiction, authorized by 11 U.S.C. § 522(b)(2) and (b)(3), arguably creates an issue about states' authority to legislate in the area of bankruptcy. The issue has been resolved however, by a century of case law distinguishing geographical uniformity from personal uniformity.

23

Under Congress' exclusive power to establish bankruptcy laws, Congress may recognize state exemption statutes without violating the uniformity requirement. The Supreme Court has held that the uniformity requirement permits Congress to "give effect to the allowance of exemptions prescribed by state law without violating the uniformity requirement." *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 469, 102 S. Ct. 1169, 1176 (1982) (citing *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 189-90, 22 S. Ct. 857, 861 (1902)); *see also Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S. Ct. 215, 217 (1918) (holding that a bankruptcy law may be uniform and yet "recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states.").

"True uniformity" is not required by the Constitution. Rather, the Supreme Court in *Hanover Nat'l Bank v. Moyses* held that in order to determine whether state laws regarding bankruptcy fall within the scope of the Bankruptcy Clause, all the Constitution requires is "geographic" uniformity, rather than "personal" uniformity. *Hanover*, 186 U.S. at 188, 22 S. Ct. at 860. The Court observed that "geographic" uniformity is satisfied "when the trustee takes in each state whatever would have been available to the creditor if the bankrupt[cy] law had not passed." *Hanover*, 186 U.S. at 190, 22 S. Ct. at 861. The Court also went on to note that "[t]he general operation of the law is uniform although it may result in certain particulars differently in different states." *Id*.

The Supreme Court discussed the concept of "uniformity," in a context other than exemptions, in *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979). In *Butner*, the Supreme Court concluded that bankruptcy courts should look to state law to determine property interests in the assets of a bankruptcy estate because there was no federal "property law." *Butner*, 440 U.S. at 55, 99 S. Ct at 918. The Court recognized that there are instances in the Bankruptcy Code where Congress incorporated state law into bankruptcy law. The Supreme Court, however, stressed the importance of uniformity under the Bankruptcy Clause. The Court held that uniformity is critical and "serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a 'windfall merely by reason of the happenstance of bankruptcy.'" *Id*. (citation omitted). While a debtor's rights in one state may vary from the rights of a debtor in a different state, there is

24

no authority for a state to differentiate between its own citizens by creating separate property rights or a separate exemption scheme for only those citizens who file for bankruptcy.

Michigan's bankruptcy-specific statute does not meet the uniformity requirement of the Bankruptcy Clause and is therefore unconstitutional. "Geographic" uniformity requires that within a state, bankruptcy and non-bankruptcy (judgment) debtors and judgment creditors be treated the same. The bankruptcy-specific exemption statute fails the "geographic" uniformity test by not affording a trustee in bankruptcy the same opportunities as a creditor or receiver outside of bankruptcy. The Supreme Court in *Hanover* made clear that such a statute is not uniform. *Hanover*, 186 U.S. at 190, 22 S. Ct. at 861 (a statute is uniform "when the trustee takes in each state whatever would have been available to the creditor if the bankrupt[cy] law had not been passed."); *see also Pontius*, 421 B.R. 814, 822 (Bankr. W.D. Mich. 2009) (Michigan's statute ensures "that the bankruptcy trustee does not take whatever property 'would have been available to a creditor' outside of bankruptcy.") (emphasis omitted).

The Michigan bankruptcy-specific statute prevents bankruptcy trustees from liquidating assets that would be available to a creditor seeking to satisfy a judgment against a party not in bankruptcy. If a debtor has chosen the bankruptcy-specific exemption statute, a bankruptcy trustee cannot liquidate real property unless the debtor's equity in the property exceeds $30,000. By comparison, a judgment creditor may liquidate real property to satisfy a judgment whenever the debtor's equity in the property exceeds $3,500.[11] A state statute which expressly differentiates between the rights available to a judgment creditor and those available to a bankruptcy trustee, violates the uniformity requirements of the Bankruptcy Clause.

After reviewing the history and text of the Bankruptcy Clause and the case law, the Panel concludes that Michigan's bankruptcy-specific exemption statute is unconstitutional under the Bankruptcy Clause.

---

[11]Assuming the property is not held as a tenancy by the entireties.

25

IV.     The Panel need not determine whether the bankruptcy-specific exemption statute violates the Supremacy Clause.

As the Panel has determined that the bankruptcy court erred in determining that the bankruptcy-specific exemption statute did not violate the Bankruptcy Clause of the United States Constitution, it is unnecessary to address the bankruptcy court's additional conclusion that the statute does not violate the Supremacy Clause. *See, e.g., Harris v. City of Circleville*, 583 F.3d 356, 373-74 (6th Cir. 2009) (declining to reach constitutional questions that were not necessary to resolution of the appeal); *United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002) ("Courts should avoid unnecessary constitutional questions.") (citations omitted).

## CONCLUSION

For the reasons stated above, the Panel REVERSES the orders of the bankruptcy court. Michigan's bankruptcy-specific exemption statute (Mich. Comp. Laws § 600.5451) is unconstitutional under the Bankruptcy Clause of the United States Constitution (art. I, § 8, cl. 4).