RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

IN RE: STEVEN M. SCHAFER,

$\qquad$ *Debtor.*

_____

THOMAS C. RICHARDSON,

$\qquad$ *Trustee-Appellee,*

v.

STEVEN M. SCHAFER,
    *Debtor-Appellant* (11-1340 & 11-1387),

STATE OF MICHIGAN,
        *Intervenor-Appellant* (11-1340).

Nos. 11-1340/1387

Appeal from the Bankruptcy Appellate Panel
of the United States Court of Appeals for the Sixth Circuit.
Nos. 09-03268; 09-09415—Scott W. Dales, Bankruptcy Judge.

Argued: June 1, 2012

Decided and Filed: August 20, 2012

Before: COLE and CLAY, Circuit Judges; MATTICE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Daniel E. Sonneveldt, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, Scott P. Zochowski, Troy, Michigan for Appellants. Nicholas J. Daly, LEWIS, REED & ALLEN P.C., Kalamazoo, Michigan, for Appellee. **ON BRIEF:** Heather M.S. Durian, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, Scott P. Zochowski, Troy, Michigan for Appellants. Nicholas J. Daly, LEWIS, REED & ALLEN P.C., Kalamazoo, Michigan, for Appellee. Tara Twomey, NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS, San Jose, California, for Amici Curiae.

_____

[*] The Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee, sitting by designation.

————————————

**OPINION**

————————————

COLE, Circuit Judge.  The Constitution's Bankruptcy Clause grants Congress the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States[,]" U.S. Const. art. I, § 8, cl. 4, and its Supremacy Clause makes the laws that Congress passes pursuant to that power the "supreme Law of the Land[,]" U.S. Const. art. VI, cl. 2.  The question before this Court is whether, in light of those provisions, a state may enact an exemption scheme that applies *only* to debtors in bankruptcy.  The bankruptcy trustee argues that a state may not, that such a law would violate both the Bankruptcy Clause and the Supremacy Clause.  The debtor and the State of Michigan disagree.  They argue that the interpretation given to the phrase "uniform Laws" by both the Supreme Court and this Court permits states to act in the arena of bankruptcy exemptions even if they do so by making certain exemptions available only to debtors in bankruptcy, and that such exemptions schemes are not invalidated by the Supremacy Clause.  We agree, and thus AFFIRM the judgment of the bankruptcy court and hold that Michigan's bankruptcy-specific exemption statute, Mich. Comp. Laws § 600.5451, is constitutionally sound.

## I.  BACKGROUND

None of the underlying facts are in dispute.  In March 2009, Steven Schafer, the debtor-appellant, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *Richardson v. Schafer (In re Schafer)*, 455 B.R. 590, 592 (B.A.P. 6th Cir. 2011). Michigan law permits debtors in bankruptcy to choose their exemptions from those set forth in 11 U.S.C. § 522(d), from a set of general exemptions available to all Michigan residents irrespective of their bankruptcy status, Mich. Comp. Laws § 600.6023, or from a list of exemptions available solely to debtors in bankruptcy, Mich. Comp. Laws § 600.5451.

Schafer elected to claim a homestead exemption under the last of these, which permits bankruptcy debtors—and only bankruptcy debtors—to exempt up to $30,000 of the value of the home, or up to $45,000 if the debtor is over the age of 65 or disabled. Mich. Comp. Laws § 600.5451(1)(n). These figures are adjusted for inflation triennially, such that Schafer, who is disabled, claimed a total exemption of $44,695 in the value of his home. *Schafer*, 455 B.R. at 592; *see also* Mich. Dep't of Treasury, Property Debtor in Bankruptcy May Exempt from Levy or Sale Inflation Adjusted Amounts, 3961 Rev. 01-11 (Apr. 15, 2011), *available at* http://www.michigan.gov/documents/BankruptcyExemptions2005_141050_7.pdf. The homestead exemption contained in § 600.5451 is substantially more generous than either its federal counterpart ($21,625), 11 U.S.C. § 522(d)(1), or the Michigan general homestead exemption ($3,500), Mich. Comp. Laws § 600.6023(1)(h).

Thomas Richardson, the trustee-appellee ("Trustee"), subsequently filed an objection to Schafer's use of § 600.5451's exemption scheme.[1] *Schafer*, 455 B.R. at 592. The Trustee argued that the bankruptcy-specific exemption statute violates the Bankruptcy Clause, as well as the Supremacy Clause.

The Bankruptcy Court for the Western District of Michigan held the bankruptcy-specific exemption scheme constitutional. *In re Jones*, 428 B.R. 720, 721 (Bankr. W.D. Mich. 2010). In so doing, the bankruptcy court relied on Supreme Court and Sixth Circuit precedent, including our decision in *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir. 1983), for the proposition that states have concurrent authority to promulgate laws governing exemptions applicable in bankruptcy cases. *Jones*, at 428 B.R. The bankruptcy court suggested that *Rhodes* was at odds with another of our decisions, *Hood v. Tennessee Student Assistance Corp.*, 319 F.3d 755 (6th Cir. 2003), *aff'd on other grounds*, 541 U.S. 440 (2004), over whether Congress retained exclusive authority to implement bankruptcy laws. *Jones*, 428 B.R. at 727. After conducting a lengthy inquiry into the history of the "uniform Laws" language of the Constitution's Bankruptcy

---

[1]Originally, two bankruptcy court judgments were appealed to the bankruptcy appellate panel—Schafer's and Dorothy Ann Jones's. This Court granted a stipulated motion to dismiss Jones as a party to the appeal.

Clause, and taking into account the binding effect of *Rhodes* on our later decision in *Hood*, the bankruptcy court adopted the reasoning set forth in *Rhodes* to hold that Michigan's concurrent authority appropriately permitted § 600.5451's enactment. *Id.* The bankruptcy court also concluded that the law at issue here, § 600.5451(1)(n), was not in actual conflict with the system provided for by the Bankruptcy Code. *Id.* The bankruptcy court's decision, however, conflicted with other decisions from that district that had invalidated § 600.5451. *See In re Pontius*, 421 B.R. 814 (Bankr. W.D. Mich. 2009); *In re Wallace*, 347 B.R. 626 (Bankr. W.D. Mich. 2006).

The Trustee appealed to the United States Bankruptcy Appellate Panel of the Sixth Circuit ("BAP"), at which point the State of Michigan moved to intervene in support of Schafer's position. The BAP granted the motion, but nonetheless reversed the bankruptcy court and found the bankruptcy-specific exemption statute unconstitutional, *Schafer*, 455 B.R. at 591.

The BAP relied in part on our decision in *Hood* to hold that, in general, Congress has exclusive authority to promulgate bankruptcy laws. *Rhodes*, the BAP held, stood for the proposition that states have concurrent jurisdiction in the area of bankruptcy exemptions, but only because Congress affirmatively delegated that power; the power to create a bankruptcy-specific exemption statute was, according to the BAP, outside the scope of that delegation. *Id.* at 603. The BAP further held that even if such a power were within the scope of the delegation, the Constitution's Bankruptcy Clause requires "geographic uniformity" between the exemptions available to a debtor in bankruptcy and a debtor outside of bankruptcy. *Id.* at 606. Finding that § 600.5451 precluded such geographic uniformity, and was thus unconstitutional, the BAP declined to consider the bankruptcy court's Supremacy Clause analysis. *Id*. The State of Michigan timely appealed the BAP's judgment to this Court.[2]

---

[2] In June 2011, a number of consumer advocacy groups, including the National Association of Consumer Bankruptcy Attorneys, the National Consumer Law Center, the Legal Services Association of Michigan, the Michigan Poverty Law Program, and the Council of the Consumer Law Section of the State Bar of Michigan, moved to file an amicus brief advocating for reversal of the BAP's judgment. This Court granted that motion.

## II. ANALYSIS

In reviewing cases appealed from the BAP, we focus our review on the bankruptcy court's decision. *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 341 (6th Cir. 2003). In doing so, findings of facts are reviewed for clear error, whereas conclusions of law are reviewed de novo. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994). Where, as here, a statute is challenged as unconstitutional, we construe the statute to avoid constitutional infirmity when "fairly possible." *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

### A. *The Power to Pass Bankruptcy Legislation*

As an initial matter, the parties disagree on which entities are vested with the power to pass laws directly affecting the bankruptcy process. The Trustee argues that by virtue of its application solely to debtors in bankruptcy, Michigan's bankruptcy-specific exemption statute is a "bankruptcy law." A general exemption statute, on the other hand, is a "non-bankruptcy law" because all debtors, regardless of bankruptcy status, may take advantage of it to shield assets from creditors. The "uniform Laws" language of the Bankruptcy Clause, the Trustee contends, endows Congress with the exclusive authority to pass bankruptcy laws, and Michigan overstepped its bounds when it passed § 600.5451.[3]

In support of his exclusivity argument, the Trustee directs our attention to language in *Hood* describing the original understanding of the Bankruptcy Clause: "As it was initially understood, the Bankruptcy Clause represented the states' total grant of their power to legislate on bankruptcy. . . . The authority was understood to be exclusive because any lesser grant would have defeated the grant's original purpose." *Hood*, 319 F.3d at 764. Such a system would permit the bankruptcy process to rise "above

---

[3]It bears noting that the Trustee's argument here differs from his other uniformity argument, discussed below; here, the Trustee argues that the "uniform Laws" language serves as a procedural restraint that restricts states from acting at all, whereas below he argues that the language acts as a substantive standard against which to judge a bankruptcy law.

individual states' interests." *Id*. The Trustee, as became clear during oral argument, believes that any statutory developments since the Constitution's passage may only abrogate such exclusivity if the legislative intent to do so is manifest. What the Trustee does not do, however, is provide us with a full picture of the *Hood* Court's analysis of such exclusive power. In the very next paragraph, we explained that "this understanding that the federal power was exclusive eventually gave way to an acceptance that states could, in the absence of federal legislation, pass laws on bankruptcy . . . ." *Id.* at 765. *Hood*, which resolved whether Congress could properly abrogate a state's sovereign immunity pursuant to § 106 of the Bankruptcy Code, does not stand as an unyielding barrier to state action in the bankruptcy field.

The bankruptcy court, as well as the debtor in this case, calls our attention to our earlier pronouncements in *Rhodes*, in which we stated that "[i]t is fundamental that the state and federal legislatures share concurrent authority to promulgate bankruptcy laws . . . ." *Rhodes*, 705 F.2d at 163. Unlike the bankruptcy court, we do not read *Rhodes* to conflict with *Hood*, which had nothing to do with the issue of exemptions and, therefore, did not discuss *Rhodes*. Under those precedents, the states retain the power to act where the federal government has declined to do so (*Hood*) or where, as in the area of exemptions, it has decided to permit the states to act (*Rhodes*). And perhaps presciently, for our purposes anyway, the *Rhodes* Court noted that "the Supremacy Clause and the doctrine of preemption will serve to invalidate state promulgations to the extent that they are inconsistent with or contrary to federal laws." *Id.*

*Rhodes* emphasizes the importance of 11 U.S.C. § 522(b)(2), the "opt-out" provision, which permits a state to preclude its citizens from utilizing the federal exemption scheme outlined in § 522(d). The decision explained that "Congress did not intend to preempt bankruptcy exemptions through promulgation of 11 U.S.C. § 522(d) since it vested in the states the ultimate authority to determine their own bankruptcy exemptions [via § 522(b)(2)]."[4] *Id. Rhodes*, in turn, was cited approvingly in *Storer v.*

---

[4]*Rhodes* referred to § 522(b)(1), though the relevant language is now contained in § 522(b)(2). *See* Pub. L. 109-8, 119 Stat. 55.

*French (In re Storer)*, wherein we noted that "the states are empowered to create whatever exemptions they elect . . . ."  58 F.3d 1125, 1128 (6th Cir. 1995) (quoting *Rhodes*, 705 F.2d at 163).

The Trustee's arguments would be better received had Congress decided to require all bankruptcy debtors to use the federal exemptions, but such a scheme was specifically considered and rejected with the enactment of the Bankruptcy Code. Sensing a need for reform of the exemption scheme in place under the Bankruptcy Act, Congress tasked a legislative commission with modernizing bankruptcy laws to address a "[l]ack of uniformity in the treatment of debtors."  *See* Eric A. Posner, *The Political Economy of the Bankruptcy Reform Act of 1978*, 96 Mich. L. Rev. 47, 68 (1997) (citing Report of the Comm'n on the Bankr. Laws of the United States, H.R. Doc. No. 93-137, at 4 (1973)).  That commission recommended adopting a set of uniform federal exemptions, but a "last minute compromise thwarted this attempt at uniformity."  Marla D. Wells, Note, *Federal Bankruptcy Exemptions:  How Far Out Is Opting Out?*, 37 Baylor L. Rev. 811, 814 (1985).  Unfortunately, there is "scant available legislative history" that could provide an insight into what the drafters intended the scope of the opt-out provision to be.   James B. Haines, Jr., *Section 522's Opt-Out Clause: Debtors' Bankruptcy Exemptions in a Sorry State*, 1983 Ariz. St. L.J. 1, 8 (1983).

Some have divined from such legislative tea leaves—or more accurately, from the lack of any such tea leaves—a congressional intent to prohibit states from enacting bankruptcy-specific exemption statutes.  For example, in a decision relied on by the Trustee, one bankruptcy court held that "in adopting 11 U.S.C. § 522(b)(3), Congress did not intend to allow a bankruptcy debtor to claim exemptions under a state bankruptcy-specific exemption law."  *In re Reinhart*, 460 B.R. 466, 467 (Bankr. E.D. Mich. 2011).  In so holding, the *Reinhart* court relied in part on *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 187 (1902).  Based on *Moyses*, the bankruptcy court found that "it is clear that in adopting the 1898 Bankruptcy Act, Congress intended only that a state's exemptions from execution on a judgment would be applicable in bankruptcy, because such a constraint is necessary to meet the constitutional uniformity

requirement." *Reinhart*, 460 B.R. at 468. That court also noted that the absence of any legislative history of the Bankruptcy Code discussing a change in the law of exemptions to permit states to enact bankruptcy-specific exemptions schemes provided support for its view that Congress did not intend such a change; if Congress had so intended, § 522(b)(3) would have been unconstitutional under the interpretation of the Bankruptcy Clause set forth in *Moyses*. *Id*. at 469.

The argument regarding congressional intent is not well taken. "In such a substantial overhaul of the system [as that made by the Bankruptcy Code], it is not appropriate or realistic to expect Congress to have explained with particularity each step it took." *United States v. Ron Pair Enters., Inc*., 489 U.S. 235, 240 (1989). "Rather, as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Id*. at 240–41. The plain language of § 522(b) demonstrates unambiguously that "Congress has not seen fit to restrict the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases," such that "we are without authority to impose such a requirement." *Sheehan v. Peveich*, 574 F.3d 248, 252 (4th Cir. 2009). Statutes ought to be construed as constitutional when fairly possible, *Eubanks*, 937 F.2d at 1122, and, for the reasons explained below, an interpretation of § 522 that permits states to enact bankruptcy-specific exemptions schemes does not run afoul of either the Bankruptcy or Supremacy Clauses of the Constitution.

The BAP contended that reliance on *Rhodes* and *Storer* is not enough to legitimate § 600.5451, given that those cases do "not lead to the conclusion that states are allowed to take the affirmative step of enacting legislation that applies *only* to state residents who file for bankruptcy." *Schafer*, 455 B.R. at 604. Thus, the BAP asserts, the power to forbid is not the same as the power to create, *id.* at 604, and a bankruptcy-specific statute like § 600.5451 is outside the scope of Congress's limited delegation of power. But this interpretation misunderstands the concept of concurrent jurisdiction in the area of bankruptcy exemptions, and imputes, without a basis to do so, a limit onto a state's power to act. As the *Rhodes* Court explained, states are permitted to act in this

arena, with the proviso that the Supremacy Clause and the doctrine of preemption will invalidate such laws if necessary.  705 F.2d at 163.

In reaching its conclusion, the BAP analyzed a number of arguments set forth by other courts that had concluded that because § 522(b)(3)(A) allowed debtors to exempt property under "[s]tate or local law that is applicable," Congress authorized states to pass statutes like § 600.5451.  *Schafer*, 455 B.R. at 603.  The BAP disagreed, finding that such arguments "conflate[] two different rights: that is, the *debtor's* right to exempt property under applicable state law, with the *states'* right to enact legislation which must satisfy Constitutional requirements."  *Id.* at 604.  Put simply, the BAP contends that Congress's enactment of § 522(b) was a grant of power to *debtors*, and not a general grant of power to *states*.  Therefore, "[t]he states' 'concurrent jurisdiction' is limited to 'opting-out' or passing laws which apply to *all* state residents."  *Id.*

That § 522(b)'s ambit is so cabined finds no basis in our precedent.  To the contrary, *Rhodes* speaks to a *state's* power to enact particular legislation.  *Rhodes*, 705 F.2d at 163 ("Congress . . . vested in the states the ultimate authority to determine their own bankruptcy exemptions [and § 522(b)(2)] encompasses no facial restrictions upon the states' authority to opt-out.").  Other courts have found that such a construction of § 522(b)(2) is improper, given that other parts of the Bankruptcy Code refer to state or local law, yet it is without dispute that in those sections it would be improper for states to legislate:

> Throughout the Bankruptcy Code, Congress has referred to "state or local law" without the phrase "non-bankruptcy" and, by doing so, has not implicitly "permitted states to pass their own bankruptcy laws on the subject."  *See, e.g.*, 11 U.S.C. § 346(b) which requires a trustee to withhold amounts from the payment of wage claims "under applicable state or local tax law."  Does this mean that a state or locality could promulgate a tax law applicable *only* to trustees in bankruptcy imposing a higher withholding level for bankruptcy claimants or more onerous withholding duties on trustees? Also, consider 11 U.S.C. § 506(b) which allows a secured creditor to collect "fees, costs, or charges provided for under . . . State statute."  Does this authorize a state to grant or deny to a secured creditor the right to collect such fees only in federal bankruptcy cases?

*In re Pontius*, 421 B.R. at 818 n.9.  The distinction between the statutes discussed in *Pontius* and § 522(b) is that § 522(b) implicitly authorizes states to preempt federal law on the subject of exemptions, *Rhodes*, 705 F.2d at 163, and to create their own exemption schemes.  These other statutes, such as §§ 346(b) and 506(b), permit no similar act.

Our understanding of *Rhodes*, § 522(b), and the "uniform Laws" language of the Bankruptcy Clause supports our view that Michigan retains the power to pass a law like § 600.5451.  States are afforded a wide berth in the exemptions arena.  "The Bankruptcy Code allows the States to define what property a debtor may exempt from the bankruptcy estate that will be distributed among his creditors[,]" and "[n]othing in [§ 522(b)] limits a State's power to restrict the scope of its exemptions . . . ."  *Owen v. Owen*, 500 U.S. 305, 306, 308 (1991).  That Michigan has the power to pass such a law does not end the inquiry; that law must also be compliant with the substantive limitations of the Bankruptcy and Supremacy Clauses.

*B.  The Requirement of Uniformity*

The Bankruptcy Clause of the Constitution grants Congress the authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States[.]"  U.S. Const. art. I, § 8, cl. 4.  The "uniform Laws" language serves as a substantive limit on statutory acts, but is not meant to act as a "straightjacket that forbids" distinguishing among different classes of debtors.  *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 469 (1982).  We have previously rejected formalistic approaches to uniformity in bankruptcy, because doing so "overlooks the flexibility inherent in the constitutional provision . . . ."  *Schultz v. United States*, 529 F.3d 343, 354 (6th Cir. 2008) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 158 (1974)).

The only decision by a federal court of appeals that has addressed the uniformity requirement of the Bankruptcy Clause in the context of a state's bankruptcy-specific exemption statute concluded that the statute did not violate the uniformity requirement.  *See Kulp v. Zeman (In re Kulp)*, 949 F.2d 1106, 1109 n.3 (10th Cir. 1991) ("Defendants . . . argue in the alternative that Colo. Rev. Stat. § 13-54-104 violates the constitution's

uniformity requirement for bankruptcy laws because it creates a bankruptcy exemption which is not available to other Colorado debtors. This argument is meritless. [It] confuse[s] the geographical uniformity doctrine with the well-established principle that states may pass laws which do not conflict with the federal scheme. . . . In this case, we have no conflict because 11 U.S.C. § 522 expressly delegates to states the power to create bankruptcy exemptions.") (internal citations omitted). For the reasons stated below, we reach the same conclusion.

The bankruptcy court determined that the uniformity requirement applied only to federal enactments, and was thus not relevant to the instant inquiry. *Jones*, 428 B.R. at 729 n.9. The BAP disagreed, holding that "[a] state law which applies only to debtors in bankruptcy must be analyzed under the uniformity requirement of the Bankruptcy Clause." *Schafer*, 455 B.R. at 601. Implicit in this argument is the notion that § 600.5451 was passed pursuant to a delegation of Congress's Bankruptcy Clause power, so any resultant laws must be bound in the same way as if passed by the federal legislature. But any such delegation would have been pursuant to 11 U.S.C. § 522(b)(2), and we have previously, and repeatedly, held that § 522(b)(2) "is not an unconstitutional delegation of congressional legislative power but rather is merely a recognition of the concurrent legislative power of the state legislatures to enact laws governing bankruptcy exemptions." *Storer*, 58 F.3d at 1129 (quoting *Rhodes*, 705 F.2d at 164). Regardless, we need not decide whether the Bankruptcy Clause's introductory phrase applies to state enactments, because even if it does, § 600.5451 meets the requirements of the Bankruptcy Clause.

### 1. *Development of uniformity jurisprudence*

Prior to Congress's decision to adopt a uniform national framework for bankruptcy, states were understood to have power to pass insolvency legislation. "So long as there is no national bankrupt act, each state has full authority to pass insolvent laws binding persons and property within its jurisdiction . . . ." *Brown v. Smart*, 145 U.S. 454, 457 (1892). Upon national action, however, states lost such power. *Moyses*, 186 U.S. at 187. *Moyses*, which upheld the 1898 Bankruptcy Act, answered

whether the adoption of state exemption schemes made the Bankruptcy Act invalid for want of uniformity. The *Moyses* Court ultimately held that a bankruptcy exemption system "is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each state whatever would have been available to the creditor if the bankrupt[cy] law had not been passed." *Moyses*, 186 U.S. at 190. The Trustee argues, and the BAP held, that this language establishes § 600.5451's infirmity. According to the Trustee, "[t]he bankruptcy-specific exemption statute fails the 'geographic' uniformity test by not affording a trustee in bankruptcy the same opportunities as a creditor or receiver outside of bankruptcy." *Schafer*, 455 B.R. at 606. This argument fails on multiple levels.

First, the portion of *Moyses* that the BAP and the Trustee latch onto focuses on whether federal bankruptcy law may recognize exemptions permitted by the various states even though the states' exemptions schemes are not uniform with one another. Two sentences prior to the passage on which the Trustee relies, the Supreme Court stated that "[i]t is quite proper . . . to confine [federal bankruptcy law's] operation to such property as other legal process could reach." *Moyses*, 186 U.S. at 190. The *Moyses* Court was not addressing whether bankruptcy and non-bankruptcy debtors must be treated alike, but rather whether a scheme whereby bankruptcy debtors in different states enjoy different exemptions is ultimately proper.

Second, in *Moyses* the Supreme Court did not hold that a bankruptcy exemption scheme is uniform in the constitutional sense *only* if the trustee takes in each state whatever would have been available if the bankruptcy law had not been passed. Rather, the Supreme Court held that "[t]he laws passed on the subject [of bankruptcy] must . . . be uniform throughout the United States, but that uniformity is geographical, and not personal," and further stated that "we do not think that the provision of the [Bankruptcy Act] as to exemptions is incompatible with the rule." *Id*. at 188. In other words, the general rule of law laid down by the Supreme Court in *Moyses* was that the uniformity requirement is geographical and that variations resulting from differences in state law are not unconstitutional. *See Schultz*, 529 F.3d at 353. Indeed, this Court has previously

recognized that *Moyses*'s interpretation of the uniformity requirement mandates geographical, as opposed to personal, uniformity, *Schultz*, 529 F.3d at 350–51, and that "[o]ver the last century, the Supreme Court has wrestled with the notion of geographic uniformity, ultimately concluding that it allows different effects in various states due to dissimilarities in state law, so long as the federal law applies uniformly among classes of debtors." *Id*. at 351. As explained below, taken together, § 522 and § 600.5451 apply no less uniformly among classes of debtors than did the exemption scheme that the Supreme Court found to be constitutional in *Moyses*.

Third, as the amici point out, full adherence to the language in *Moyses* on which the Trustee relies would call into doubt the constitutionality of the federal exemptions set forth in § 522(d)— the amount of which exceed the exemptions available in certain states under their general exemption statutes. For example, the federal homestead exemption of $21,625 far exceeds Michigan's general homestead exemption of $3,500. If Michigan had not passed a bankruptcy-specific exemption statute, a debtor in Michigan (because Michigan has not opted out of the federal exemptions) could have elected to use either the general homestead exemption of $3,500 or the federal homestead exemption of $21,625. If the debtor were to elect the federal homestead exemption, the trustee would not take "whatever would have been available . . . if the bankrupt[cy] law had not been passed." *Moyses*, 186 U.S. at 190. And yet no one suggests that this would be impermissible, demonstrating the flaw in literal adherence to the language in *Moyses* on which the Trustee grounds his argument. *See Sticka v. Applebaum (In re Applebaum)*, 422 B.R. 684, 693 (B.A.P. 9th Cir. 2009) ("The Trustee argues that under California's bankruptcy-only exemption scheme, creditors might not receive the same assets that otherwise might be available to them under California's generally applicable exemption statute. . . . However, that is exactly the result in a non-opt-out state when a debtor chooses the federal exemption scheme. In such instances, it may be that the bankruptcy trustee will not recover the same assets of a debtor for distribution that he or she would under state law.").

As one court recently noted in its discussion of *Moyses*, states and the federal government "have concurrent jurisdiction in bankruptcy, although only Congress has the power to establish a uniform system of bankruptcy. And once Congress passes one uniform act, if that system has differing effects on citizens of different states based on a particular state's laws, that result is acceptable." *In re Westby*, No. 11-40986, 2012 WL 1144412, at *5 (Bankr. D. Kan. Apr. 4, 2012).

### 2. *Section 522 and Section 600.5451 Operate Uniformly*

This Court has previously held that the Bankruptcy Clause shall act as "no limitation upon congress as to the classification of persons who are to be affected by such laws, provided only the laws shall have uniform operation throughout the United States." *Leidigh Carriage Co. v. Stengel*, 95 F. 637, 646 (6th Cir. 1899) (Taft, J.). And indeed, the uniformity provision has served as the basis for statutory invalidation by the Supreme Court only once—in upholding a challenge to a *federal* statute that, by its terms, applied to only one entity. *See Gibbons*, 455 U.S. at 472–73.

Our recent decision in *Schultz* provides additional insight into the contours of our uniformity jurisprudence. *Schultz*, which upheld the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) against a uniformity clause challenge, reiterated that a federal bankruptcy statute's incorporation of state laws may, without presenting any constitutional issue, "lead to different results in different states." 529 F.3d at 351 (quoting *Stellwagen v. Clum*, 245 U.S. 605, 613 (1918)), a view that is consistent with the interpretation of *Moyses* provided above. *See Schultz*, 529 F.3d at 353 ("*Moyses*, *Stellwagen*, and *Blanchette* cannot be read as standing for anything more than their precise holding: that Congress does not exceed its constitutional powers in enacting a bankruptcy law that permits variations based on state law or to solve geographically isolated problems."). *Schultz* clarified that it is not the *outcome* that determines the uniformity, but the uniform *process* by which creditors and debtors in a certain place are treated. "Congress may enact non-uniform laws to deal with geographically isolated problems as long as the law operates uniformly upon a given

class of creditors and debtors." *Id.*; *see also Gibbons*, 455 U.S. at 473 ("[A] law must at least apply uniformly to a defined class of debtors.").

In *Schultz*, the debtors contended that the BAPCPA's means test—which applies only if a debtor's annualized current monthly income is above the median for the applicable state—violated the uniformity requirement because (1) the relief available to debtors under the Bankruptcy Code depends in part on the results of the means test and (2) the calculations required under the means test are based in part on the state and county in which the debtor resides. 529 F.3d at 353. We disagreed with the debtors' position, finding that the law applied uniformly to those debtors who were part of a "defined class" (*i.e.*, those whose annualized current monthly income is above the family median income for the applicable state"). *Id.* at 352. "Congress is allowed to distinguish among classes of debtors, and to treat categories of debtors differently . . . ." *Id.* Such distinctions need not be subject to "heightened scrutiny," *id.* at 356, and it is not this Court's place "to pass judgment on the wisdom of congressional legislation," *id.* at 353. For our purposes, it is worth noting that, with limited exceptions, all bankruptcy debtors under § 600.5451 are treated the same, or uniformly, in contrast to those debtors discussed in *Schultz*.[5]

Quite simply, the Bankruptcy Clause does not require geographic uniformity between the exemptions available to debtors in bankruptcy and debtors outside of bankruptcy. Moreover, Michigan's decision to distinguish between debtors in bankruptcy and those outside of bankruptcy makes sense. As the amici point out, debtors in bankruptcy are often in more dire straits than those whose property is subject to levy by a specific creditor. And, as the State of Michigan points out, § 600.5451 more easily allows for bankrupt debtors to stay in their homes, updates the Michigan exemptions (at least for bankruptcy debtors) for inflation, and encourages debtors to take advantage of the bankruptcy process so as to allow for the orderly disposition of assets. The Trustee does not dispute these concerns.

---

[5] Section 600.5451 applies differently if the debtor is elderly or disabled, and allows for a higher homestead exemption for those persons. That distinction is not being challenged.

Ultimately, the Trustee's arguments rely on a strained reading of the "uniform Laws" language of the Bankruptcy Clause—one that neither the Supreme Court, nor this Court, has adopted. It would be anomalous for us to hold that a federal statute under which the relief available to debtors depends in part on their state's median income is *more* compliant with the "uniform Laws" language than a federal statute and a state statute that, working together, treat all debtors in bankruptcy the same way. Given that the Bankruptcy Clause's "uniformity requirement was drafted in order to prohibit Congress from enacting private bankruptcy laws," *Schultz*, 529 F.3d at 352 (quoting *Gibbons*, 455 U.S. at 472), adoption of the Trustee's arguments would read into the Constitution's text requirements that simply have no basis in the precedent of the Supreme Court, our precedent, or the common law.

*C. Section 600.5451 and the Supremacy Clause*

The BAP declined to reach the issue of whether the bankruptcy court erred in holding that § 600.5451 does not violate the Supremacy Clause. *See Schafer*, 455 B.R. at 606. In the only decision by a federal court of appeals that has addressed whether a state's bankruptcy-specific exemption statute violated the Supremacy Clause, the United States Court of Appeals for the Fourth Circuit concluded that it did not, *see Sheehan*, 574 F.3d at 252,[6] as did the United States Bankruptcy Appellate Panel of the Ninth Circuit, the only bankruptcy appellate panel that has yet addressed the issue. *See*

---

[6]Relying on *Rhodes*, the Fourth Circuit held that "[t]here can be no preemption . . . where Congress expressly and concurrently authorizes state legislation on the subject." *Sheehan*, 574 F.3d at 252 (internal quotation marks omitted). "[Section 522(b)(a)] is an express delegation to the states of the power to create state exemptions in lieu of the federal bankruptcy exemption scheme." *Id.* "Congress has not seen fit to restrict the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases, and we are without authority to impose such a requirement." *Id.; see also Kulp*, 949 F.2d at 1109 n.3 (recognizing "the well-established principle that states may pass laws which do not conflict with the federal scheme" and stating that "we have no conflict [between the Bankruptcy Code and a state law providing for an exemption available only to debtors in bankruptcy] because 11 U.S.C. § 522 expressly delegates to states the power to create bankruptcy exemptions"). In a federal appellate decision relied on by the Trustee, *Kanter v. Moneymaker (In re Kanter)*, 505 F.2d 228 (9th Cir. 1974), the issue was whether the bankruptcy estate had an interest in the debtor's prepetition personal injury lawsuit. There was no question that the estate had such an interest under the provisions of the Bankruptcy Act, while the interest would not be part of the estate pursuant to a California statute prohibiting "an assignee by operation of law of a party to a personal injury action [from] acquir[ing] any interest in or lien rights upon moneys recovered by such party for general damages." *Id.* at 230 n.1. The Ninth Circuit accepted the district court's construction of the state statute as applicable to bankruptcy trustees and then, affirming the district court, held that the statute was in conflict with the Bankruptcy Act, rendering it unconstitutional under the Supremacy Clause. *See id.* at 231. As explained below, there is no conflict between the Bankruptcy Code and § 600.5451.

*Applebaum*, 422 B.R. at 689.   For the reasons explained below, we agree with those courts as well as the bankruptcy court below and thus reject the Trustee's challenge to § 600.5451 based on the Supremacy Clause.

"Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez v. Campbell*, 402 U.S. 637, 644 (1971).  As all parties recognize, the purpose of § 600.5451 is to provide bankrupt debtors with the right to retain certain essential property and thereby emerge from bankruptcy with a fresh start.  Similarly, "one of the primary purposes of [federal bankruptcy law] is to give debtors a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Id.* at 648 (internal quotation marks and alterations omitted); *see also In re Guikema*, 329 B.R. 607, 613 (Bankr. S.D. Ohio 2005) ("Exemptions give the debtors a so-called 'grubstake' to begin their fresh start and act as a safety net, so that the debtor and his family are not completely impoverished due to creditor collection action or bankruptcy such that they become wards of the state.") (internal quotation marks and alterations omitted).  Seemingly, then, the statutes have similar objectives.

A state statute may conflict with federal law in one of three ways.  Under "express preemption," the intent of Congress to preempt state law is explicit. *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 561 (2002).  Under "field preemption," Congress's regulation in a field "is so pervasive or the federal interest is so dominant that an intent can be inferred for federal law to occupy the field exclusively." *Id.*  And, under "conflict preemption," the laws in question conflict such that it is impossible for a party to comply with both laws simultaneously, or where the enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law. *Id.*  Although there is an assumption that the federal law is not preemptive, such an assumption is not triggered "when the [s]tate regulates in an area where there has been a history of significant federal presence." *United States v. Locke*,

529 U.S. 89, 108 (2000).  The parties agree that explicit preemption is not applicable in the instant inquiry.

This Court has previously held that Congress's regulation in the bankruptcy field is "pervasive," but did not indicate which type of preemption applied in that case. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425 (6th Cir. 2000); *see also MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913 (9th Cir. 1996) ("[T]he lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a whole system under federal control . . . ."). What is more, our disposition in *Pertuso* primarily rested upon a conflict, and not field, preemption analysis.  *Pertuso*, 233 F.3d at 426 ("Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would *undermine* the uniformity the Code endeavors to preserve and would stand as an obstacle to the *accomplishment and execution of the full purposes* of Congress.") (emphasis added) (quotation marks and alterations omitted).

In light of the Supreme Court's statement that "state laws are thus suspended *only to the extent of actual conflict* with the system provided by the Bankruptcy Act of Congress," *Stellwagen*, 245 U.S. at 613 (emphasis added), and our explanation in *Rhodes* that "Congress expressly authorize[d] the states to 'preempt' the *federal* legislation," 705 F.2d at 163, we question whether field preemption is applicable.  *See also In re Sullivan*, 680 F.2d 1131, 1137 (7th Cir. 1982) (criticizing the use of preemption analysis when assessing state bankruptcy exemption law); *Applebaum*, 422 B.R. at 689 ("[F]ederal bankruptcy law is not so pervasive, nor is the federal interest so dominant, as to wholly preclude state legislation in the area.").  And, given that bankruptcy exemptions were a creature of state law prior to the Bankruptcy Code's enactment in 1978, the case for field preemption is even more tenuous.  *See Wyeth v. Levine*, 555 U.S. 555, 575 (2009) ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them.") (alterations omitted) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–67 (1989)).  Regardless, we need not answer whether

Congress has occupied the field of bankruptcy law as a whole, because, given our reasoning in *Rhodes*, field preemption is inapplicable in the area of bankruptcy exemptions. As such, § 600.5451 need only be considered under a conflict-preemption framework.

The Trustee contends that in enacting § 522(b)(2) Congress sought to strike a proper balance between the competing interests of creditors and debtors. That may be true, but the Trustee's suggestion that a state's enactment of a bankruptcy-specific exemption statute would undermine such a balance goes too far. For this argument, the Trustee relies in part on *In re Cross*, 255 B.R. 25, 34 (Bankr. N.D. Ind. 2000). *Cross* invalidated Indiana's bankruptcy-specific exemption statute because it frustrated the full effectiveness of national bankruptcy laws. Yet none of the arguments put forth by the *Cross* court are specific to *bankruptcy-specific* exemption statutes; they can just as easily be made against general state exemption statutes. The *Cross* court tried to distinguish these two scenarios when it wrote:

> Recognizing otherwise applicable state exemptions in bankruptcy proceedings is not the same as allowing states to create exemptions just for those proceedings. The first situation simply recognizes non-bankruptcy entitlements. It allows debtors to protect the same property in bankruptcy that they could keep from creditors outside of bankruptcy. The second directly controls the distribution of assets between debtors and creditors and, thus, how the consequences of bankruptcy are allocated between them.

*Cross*, 255 B.R. at 34. While this is an arguably valid distinction, it is immaterial for purposes of determining whether § 600.5451 frustrates national bankruptcy policy. Assume that a state permits non-bankrupt debtors to exempt $10,000 of the value of their home from creditors, but allows bankruptcy debtors a homestead exemption in excess of the federal exemption—for example, $50,000. Also assume that another state permits all debtors, those in bankruptcy and those that are not, a $50,000 homestead exemption. It is unclear to us why whatever frustrations to national bankruptcy policy that exist

under the first scenario do not also exist in the second; the Trustee does not dispute, however, that the second scenario is wholly appropriate under existing law.**7**

Were we to invalidate § 600.5451 on this basis, such frustration would still exist. And we are reticent to find unsurmountable obstacles that may result from § 600.5451's function when Congress, via § 522(b), expressly permitted variations in how states treat bankruptcy exemptions. Even if there were some conflict between § 600.5451 and the exemption policy purportedly reflected by the federal exemption amounts established in § 522, the Trustee does not make clear why this rises to the level of conflict necessary to trigger preemption. *See Storer*, 58 F.3d at 1128–29 ("[S]tates may enact different exemptions which would possibly conflict with Congress' own exemption policy as it was reflected in § 522(d).") (internal quotation marks omitted). "Simply because the exemptions differ from the federal exemptions (or from its non-bankruptcy counterpart), does not mean that such differences create a conflict that impedes the accomplishment and execution of the Bankruptcy Code." *Applebaum*, 422 B.R. at 691.

Perceiving a conflict between § 303 (providing for the commencement of involuntary bankruptcies) and bankruptcy-specific exemption statutes that allow exemptions higher than the general exemption laws, the Trustee argues that such an exemption scheme might provide a disincentive for creditors to file involuntary bankruptcy cases. As explained above, however, § 522 imposes no restrictions on the concurrent authority of the states to enact bankruptcy-specific exemption statutes. We will not read any such restrictions into another section of the Bankruptcy Code, such as §303, that has nothing to do with exemptions.

Indeed, on an as-applied basis, the Michigan statute actually *furthers*, rather than frustrates, national bankruptcy policy. As the Supreme Court has repeatedly noted, the goal of the Bankruptcy Code is to provide debtors in bankruptcy with a fresh start.

---

**7**"A few states—notably Texas and Florida—permit debtors to claim homestead exemptions in unlimited amounts, although both have acreage limitations." 3 William L. Norton, Jr., *Norton Bankruptcy Law & Practice 3d* § 56:10 n.10 (3d ed. 2011). Under 11 U.S.C. § 522(p) and (q), which were added in 2005 with the enactment of the BAPCPA, the amount of homestead exemptions available under state law is limited in certain instances to $146,450.

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.") (internal quotation marks omitted).  By permitting debtors in bankruptcy  a higher homestead exemption than either the general state exemption statute or the federal exemption statute allow, bankruptcy debtors in Michigan are better able to achieve a fresh start and to obtain "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."  *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quotation marks omitted).  Accordingly, Michigan's bankruptcy-specific exemption statute frustrates the full effectiveness of national bankruptcy policy no more than other statutory frameworks that have survived our scrutiny.  *See Storer*, 58 F.3d at 1125; *Rhodes*, 705 F.2d at 159.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the bankruptcy court and conclude that Michigan's bankruptcy-specific exemption statute, Mich. Comp. Laws § 600.5451, is constitutional.